UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SHAUN L.,

**Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:20-cv-01936-TPK

OPINION AND ORDER

## OPINION AND ORDER

    Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security.  That final decision, issued by the Appeals Council on November 5, 2020, denied Plaintiffs application for disability insurance benefits. Plaintiff has now moved for judgment on the pleadings (Doc. 8) and the Commissioner has filed a similar motion (Doc. 9).  For the following reasons, the Court will **DENY** Plaintiff's motion, **GRANT** the Commissioner's motion, and direct the entry of judgment in favor of the Commissioner.

### I.  BACKGROUND

    Plaintiff filed his application for benefits on July 19, 2018 alleging that he became disabled on March 19, 2018.  After initial administrative denials of his claim, Plaintiff appeared and testified at a video administrative hearing held on February 28, 2020.  A vocational expert, Jay Stenibrenner, also testified at the hearing.

    The Administrative Law Judge issued an unfavorable decision on February 4, 2020.  He first found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2022, and that he had not worked since his alleged onset date.  Next, the ALJ concluded that Plaintiff suffered from severe impairments including Stamford B aortic dissection involving the celiac, SMA, AMA, and left common iliac artery, peripheral artery disease, hypertension, status post radical left inguinal orchiectomy without complication, chronic kidney disease, obesity, and status post right iliac artery stenting for claudication  At the next step of the sequential evaluation process, the ALJ found Plaintiff's impairments, considered singly or in combination, did not meet the criteria for disability set forth in the Listing of Impairments.

    The ALJ then made the following residual functional capacity determination.  He concluded that Plaintiff could perform sedentary work except that he could not climb ladders, ropes, or scaffolds, had to avoid unprotected heights and hazardous machinery, and could

perform only those jobs which allowed the use of an assistive device for prolonged walking. With that residual functional capacity, the ALJ determined that Plaintiff could not do his past relevant work as a field service representative, but he could, based on the testimony of the vocational expert, perform sedentary jobs such as surveillance system monitor or semiconductor bonder.  There were 22,604 of the former job, and 4,535 of the latter, in the national economy, and the ALJ concluded that those were substantial numbers  Consequently, the ALJ found that Plaintiff was not under a disability as defined in the Social Security Act.

Plaintiff, in his motion for judgment on the pleadings, raises two claims of error.  He contends that the Appeals Council improperly refused to consider evidence relating to a surgical procedure that occurred during the relevant time frame, and that the ALJ did not properly incorporate into his residual functional capacity finding certain reaching limitations set forth in the consultative examiner's report.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

Plaintiff, who was 42 years old on the date of the administrative hearing, testified, first, that he lived with his wife and two step-children, that he hadattended high school and vocational school, and that he had a driver's license.  He stopped working on March 18, 2018, after having spent about 15 years as a service technician who fixed meat processing equipment.  On that day, he had an aortic dissection, which was followed by kidney failure and a heart attack.  He was hospitalized for twelve days.  Plaintiff described his recovery as "slow" and said that since then he has suffered from severe pain in his right leg due to limited blood flow.

Three months after his aortic dissection, Plaintiff was diagnosed with testicular cancer. He had surgery for that condition and was recovering well.  He could walk or stand about ten minutes at a time and sit for half an hour before getting numbness in his right leg.  Plaintiff had been prescribed a cane for walking and used it all the time.  His lifting was severely limited and he had problems with overhead reaching due to a right shoulder condition.  Plaintiff said his medications made him drowsy and he would nap during the day.

On a daily basis, Plaintiff could shower and get dressed, but he spent most of his day sitting or lying down.  He took pain medication to help with the pain in his right thigh but it was not particularly effective.  He could do some household chores and shopped because he was the only person in the home with a driver's license.  His doctor had told him that too much exertion might cause his aortic dissection to tear open.

The vocational expert, Mr. Steinbrenner, testified that Plaintiff's past job as a field service representative was a skilled job typically performed at the medium exertional level. When asked if someone limited to sedentary work with additional restrictions could do that job, he said such a person could not.  However, that person could do jobs like surveillance system monitor, a job he said was on the increase across the nation, or semiconductor bonder, and he

gave numbers for those jobs as they existed in the national economy.  He also identified the job of telephone survey operator, and testified that although that job is listed as a light job in the Dictionary of Occupational Titles, in his experience it was strictly sedentary.  There were over 33,000 such positions in the national economy.

### B.  The Medical Evidence

The relevant medical evidence which was before the ALJ can be summarized as follows.  Records show that Plaintiff was treated at Buffalo General Hospital in March, 2018 for an aortic dissection and for what was described as an acute kidney injury during his hospital stay.  A note from the following month shows his conditions as acute kidney injury, stage 3 chronic kidney disease, essential hypertension, anemia, type B aortic dissection, and severe obesity.  His renal function was described as stable, however.  He was then diagnosed with testicular cancer and underwent surgery on July 31, 2018.  There is also a note in his medical records that he had surgery for a right rotator cuff tear in 2015.  In June, 2019, he underwent a right iliac stenting to treat claudication.  Notes show that after that procedure, Plaintiff reported his numbness had subsided but he had pain in his right knee.  In January, 2020, he was continuing to complain of right buttock pain with walking and standing, but no rest pain.

The additional medical evidence submitted at the Appeals Council level consists of the notes from the operation performed on June 3, 2019 to treat right buttock claudication, and also notes from a 2020 hospitalization which occurred when Plaintiff began experiencing chest pains.  Those notes showed some enlargement in his aneurysm, but, again, surgery was ruled out, and he was discharged after two days with a plan to treat his high blood pressure more aggressively.  The Appeals Council determined that the latter portion of this evidence post-dated the relevant time frame and that the operative notes from June, 2019 did "not show a reasonable probability that it would change the outcome of the decision."  (Tr. 2).

### C.  Opinion Evidence

Dr. Liu performed a consultative internal medicine examination of Plaintiff on August 17, 2018.  His medical problems included high blood pressure, acute renal failure, surgery for testicular cancer, an aortic aneurysm treated with medication rather than surgery, and a history of right shoulder injury with surgery in 2015 as well as constant pain in the shoulder aggravated by exercise and cold weather.  Plaintiff told Dr. Liu he was able to cook on a daily basis and clean, shop, and do laundry.  He had some limitation in the range of motion of his right shoulder.  Dr. Liu thought Plaintiff was mildly to moderately limited in his ability to lift, carry, and to reach overhead with his right arm.  He also needed to avoid moderate or excessive activity due to the aortic aneurysm.  (Tr. 902-06).

The state agency reviewer, Dr. Krist, reviewed the records, including the results of Dr. Liu's examination, and concluded that Plaintiff's lifting capacity was limited to ten pounds and that he could stand or walk for two hours and sit for up to six hours in a workday.  He did not impose any postural, manipulative, or environmental limitations, although he did note the

y

restricted range of motion of the right shoulder detailed in Dr. Liu's report.  (Tr. 152-54).

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

### IV.  DISCUSSION

#### A.  The Appeals Council's Action

Plaintiff's first argument centers around the Appeals Council's refusal to consider the evidence which he submitted after the ALJ's decision.  As noted above, a portion of the records submitted - the portion which is the focus of Plaintiff's argument - relate to the June 3, 2019 procedure where a stent was placed in Plaintiff's right common iliac artery in an attempt to alleviate numbness and pain in Plaintiff's right buttock and leg.  Plaintiff insists that this evidence, relating to a surgical procedure which occurred during the period at issue, had to be material to the ALJ's consideration of Plaintiff's claim, and that the Appeals Council erred by concluding that it would not have changed the outcome of the case had the ALJ considered it.  He also asserts that the Appeals Council's rationale supporting its conclusion is too brief to be

supportable. The Commissioner notes, correctly, that other medical records which were before the ALJ discussed this procedure, and that the ALJ listed Plaintiff's status following the procedure as one of his severe impairments. The Court notes that Plaintiff also testified about having undergone the stenting, saying it provided little relief. The first question raised by Plaintiff's claim is whether this was evidence which had a reasonable probability of changing the ALJ's decision. *See* 20 C.F.R. §404.970(a)(5)(the Appeals Council will review a case if it "receives additional evidence that is new, material, and relates to the [relevant time] period ... and there is a reasonable probability that the additional evidence would change the outcome of the decision"). In making its decision, the Court is guided by the ruling made in *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015), where the Court of Appeals said that "[i]f the Appeals Council denies review of a case, the ALJ's decision, and not the Appeals Council's, is the final agency decision." Under those circumstances, the Court must determine if, considering the new evidence which the Appeals Council declined to review, the ALJ's decision is supported by substantial evidence. *Id.*

There are cases - *Lesterhuis* is one - where the new evidence substantially undercuts the ALJ's decision to the point where it does not rest on substantial evidence. *See also, e.g., Westhoven v. Comm'r of Soc. Sec.*, 2019 WL 1541053, at *6 (W.D.N.Y. Apr. 9, 2019). On the other hand, if the newly-submitted records are merely repetitious of evidence already in the record and considered by the ALJ (and if the ALJ correctly interpreted the prior evidence), the Appeals Council's denial of review does not provide a basis for remand. *See, e.g., Clark v. Comm'r of Social Security*, 2020 WL 4390697 (W.D.N.Y. July 31, 2020).

This is such a case. Nothing in the notes from the stenting procedure itself alter what was already in the record - namely, that the procedure occurred and that, according to the follow-up note, it was partially successful in reducing Plaintiff's symptoms. Since the ALJ already considered and weighed this evidence, it is not reasonably probable that, even if he had seen the additional notes, the outcome of the case would have been different.

Plaintiff has advanced a secondary argument in support of his first claim - that the Appeals Council's rationale for not considering the new evidence is too conclusory and that a remand for further explanation of its decision is needed. He cites to this Court's decision in *Mendez v. Comm'r of Soc. Security*, 2019 WL 2482187 (W.D.N.Y. June 14, 2019), as standing for the proposition that such a cursory denial by the Appeals Council justifies a remand. As *Mendez* itself explains, however, that is not a hard and fast rule; it depends in large part on the volume and complexity of the new evidence submitted. *Id*. at *4. Courts have often followed the approach set forth above, which consists of determining whether, in light of the new evidence, the ALJ's decision is nonetheless supported by substantial evidence even if the Appeals Council has provided little or no explanation for its action. *See, e.g., Graham v. Berryhill*, 397 F.Supp.3d 541 (S.D.N.Y. 2019). Consequently, nothing in Plaintiff's first claim of error supports an order of remand.

### B. Residual Functional Capacity Finding

Plaintiff's second claim of error also has two parts. First, he argues that the residual functional capacity finding inexplicably omits reaching limitations contained in the consultative examiner's report. Second, he asserts that the job of surveillance system monitor at the sedentary level no longer exists, and that the remaining sedentary job identified by the vocational expert does not exist in significant enough numbers in the national economy to satisfy the requirements of the Social Security Act. The Commissioner responds that the type of reaching limitations expressed by Dr. Liu are fully consistent with the ability to perform a full range of sedentary work, and that, in any event, the ALJ was not required to accept those limitations in light of the opinion of the state agency physician, Dr. Krist, whose opinion the ALJ found persuasive and who did not mention reaching limitations. The Commissioner has not responded to the second portion of this argument, however.

The ALJ did find Dr. Krist's persuasive, calling it "thorough" and "supported by the evidence of record." (Tr. 31). He also found Dr. Liu's opinion to be persuasive, noting that it was consistent with the other medical evidence and that it "provides probative evidence to support the claimant's residual functional capacity." (Tr. 33). His decision does not explain the absence of the overhead reaching limitation, and there is some evidence in the record to support at least a measure of restriction in that area, given that Plaintiff had undergone rotator cuff surgery and had some limitation of motion on examination.

Dr. Liu described this limitation as "mild to moderate." (Tr. 905). The Commissioner, in arguing that such a restriction is nonetheless consistent with the ability to do sedentary work, describes this Court's decision in *Boltz v. Berryhill*, 2017 WL 999204 (W.D.N.Y. March 15, 2017) as holding that a mild to moderate reaching limitation does not preclude a claimant from performing a full range of sedentary work. In *Boltz*, however (a case also involving Dr. Liu as a consultative examiner), the ALJ specifically incorporated a reaching limitation into the residual functional capacity finding, determining that the claimant could do only a limited range of sedentary work and could not reach overhead. *Id*. at *2. The other authorities cited by the Commissioner do stand for the proposition that someone with mild to moderate limitations in various areas can likely perform light work, but they do not excuse an ALJ's failure to explain why a particular limitation expressed in an opinion found to be persuasive, and which is supported by evidence in the record, has not been included in the residual functional capacity finding. The Court concludes that the ALJ committed an error here by not acknowledging the conflict between the two medical opinions or offering an explanation for why he chose one over the other. The question then becomes whether the error is harmless.

Courts have found an error of this type to be harmless if the jobs identified by the vocational expert do not require work activities that would be ruled out by the limitation in question, and they have often referred to the Dictionary of Occupational Titles in making that determination. *See, e.g., John S. v. Kijakazi*, 2022 WL 866548, *11 (N.D.N.Y. March 23, 2022). Plaintiff points out that the job of semiconductor bonder does, according to the DOT, appear to require some amount of reaching, and the description of that position (Code 726.685-066) seems to confirm that statement. The other job identified by the vocational expert, surveillance system monitor, does not appear to require overhead reaching, but Plaintiff cites to a 2016 vocational

study as authority for the proposition that the job described by the vocational expert no longer exists as a sedentary occupation.  He has not cited any case law in which a court has used this study as a basis for overturning an ALJ's decision on this issue, however.

This case bears a striking similarity to *O'Neal v. Comm'r of Soc. Security*, 799 Fed.Appx. 313 (6th Cir. Jan. 7, 2020).  The plaintiff in that case also argued that the vocational expert's reliance on the DOT for his testimony that the job of surveillance system monitor existed as a sedentary position in the national economy was unreliable because the DOT had not been updated since 1991 and more recent evidence contradicted its description of that position.  The Court rejected that argument, noting that if an ALJ obtains testimony from a vocational expert that is consistent with the DOT, the ALJ need not conduct a further inquiry into whether that testimony is independently reliable.  Courts in the Sixth Circuit have generally followed that ruling.  *See, e.g., Cockrell v. Comm'r of Soc. Security*, 2020 WL 13542436 (S.D. Ohio Feb. 11, 2020).  It is true that in *James D. v. Comm'r of Soc. Security*, 2022 WL 958525 (N.D.N.Y. Jan. 7, 2022), a somewhat different result was reached, but that case involved actual testimony from the vocational expert that the DOT description of that job was different from the expert's experience, testimony which the ALJ rejected.  That is not what happened here.  The general rule is that the ALJ is entitled to rely on the record created before him, and, in this case, the record does not contain the study to which Plaintiff cites nor any evidence that would have called into question the reliability of the vocational expert's testimony.  Consequently, the Court finds any error made by the ALJ concerning an overhead reaching requirement to be harmless because it did not affect the step five determination, and the Court will therefore affirm the Commissioner's decision.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 8), **GRANTS** the Commissioner's motion (Doc. 9), and **DIRECTS** the Clerk to enter judgment in favor of the Commissioner.

/s/ Terence P. Kemp
**United States Magistrate Judge**